```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF SOUTH CAROLINA
            CHARLESTON DIVISION
```

| | |
|---|---|
| Ben W. Bane, #51157-018,<br><br>               Plaintiff,<br>vs.<br><br>United States of America,<br>               Defendant. | Civil Action No. 2:17-cv-3371-CMC-MGB<br><br>**OPINION AND ORDER** |

      Plaintiff brought this complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346, alleging negligent medical care during his incarceration in the Bureau of Prisons ("BOP"). ECF No. 1. This matter is before the court on Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 22. Because Plaintiff is proceeding *pro se*, a *Roseboro* Order was sent advising Plaintiff of the importance of a dispositive motion and the need for Plaintiff to file an adequate response. ECF No. 23. Plaintiff filed his response in opposition and a supplement to his response. ECF Nos. 25, 26.

      In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), D.S.C., this matter was referred to United States Magistrate Judge Mary Gordon Baker for pre-trial proceedings and a Report and Recommendation ("Report") on dispositive issues. On September 10, 2018, the Magistrate Judge issued a Report recommending Defendant's motion be granted and this matter be dismissed without prejudice. ECF No. 31. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections to the Report on September 28, 2018. ECF No. 34.

1. **Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

2. **Facts**

Plaintiff has been housed at three institutions during his incarceration: the Federal Holding Center in Citrus, Florida[1]; the Federal Correctional Complex in Forrest City, Arkansas, and the Federal Correctional Institution in Estill, South Carolina. Before he was sentenced, Plaintiff was diagnosed with a "painful left foot deformity" by Dr. Steven Blustein, who opined "the nature of this deformity will require surgical management in the future." ECF No. 1-1 at 8. Plaintiff was unable to have the surgery before he was incarcerated, and alleges his feet remained painful.

Plaintiff pursued medical treatment many times regarding his feet. He was placed on the waiting list for podiatry at Forrest City, and saw the podiatrist on March 9, 2012. ECF No. 1-1 at

---

[1] Plaintiff states he was unable to obtain his medical records from the Federal Holding Facility in Florida, where he was held for approximately ten months while awaiting sentencing. ECF No. 1 at 13.

15. That podiatrist, Dr. Khumato, noted bunions and a dislocated joint in Plaintiff's left foot. *Id.* at 16. Surgical correction was recommended to correct the hallux valgus deformity. *Id.* However, on December 6, 2012, the Utilization Review Committee ("URC") denied Plaintiff's "consult for podiatry."[2] *Id.* at 21. Per a Health Services Clinical Encounter note dated February 26, 2013, the instructions from the URC were to "treat conservatively with toe separators and pain management." *Id.* at 25. He was given toe separators and referred to commissary for insoles. *Id.* at 26. Although Plaintiff filed an administrative grievance charging lack of adequate medical treatment, it was denied and Plaintiff was instructed to follow up in sick call. *Id.* at 27. On April 25, 2013, the Warden responded to Plaintiff's continued grievance, noting "the Clinical Director has the option to treat your medical conditions with conservative measures." *Id.* at 32. Plaintiff appealed, but the appeal was denied by J.A. Keller, Regional Director, on July 1, 2013. *Id.* at 39.

A new consultation for podiatry was requested per a Health Services Clinical Encounter note "Chronic Care encounter" on May 1, 2013. *Id.* at 35. On May 2, 2013, the Clinical Director sent a memorandum to Plaintiff noting the request for Podiatry had been reviewed by the URC but did "not meet the medical criteria as determined by the URC and will be sent to the Regional Medical Director for decision." *Id.* at 37.

Plaintiff's feet were x-rayed on May 22, 2013, and the results reviewed by Health Services on June 21, 2013. *Id.* at 44, 45. Health Services requested a consultation with an

---

[2] This memo was sent "from W. Resto, Clinical Director." ECF No. 1-1 at 21.

orthopedist based on these x-rays. *Id.* at 45. On July 16, 2013, Plaintiff was seen by Dr. Sokoloff, an orthopedist at OrthoNow. *Id.* at 46. Medical records reveal Dr. Sokoloff noted "patient needs bilateral foot surgery. Start with left, more severe foot. Recommend bunion surgery and likely 2nd metatarsal phalange joint resection. Alternative would be custom fitted, wide toe box, stiff sole, cushioned shoes. . . . Please advise on how you would like to proceed." *Id.* at 50. On July 25, 2013, the URC denied the request for Prosthetics/Orthotics at an outside physician's office, and "referred for on-site consultation" for shoes as recommended. *Id.* at 59. On September 5, 2013, Plaintiff was seen by BOP Health Services, who had received Dr. Sokoloff's notes. At that visit, the provider noted "will write consult" and "please schedule surgery as recommended with assistance from podiatry." *Id.* at 63. However, on September 12, 2013, the orthopedic request was denied by the URC as it "did not meet the medical criteria as determined by the URC and will be sent to the Regional Director for decision." *Id.* at 64. There is no record of Regional Director action on this request.

On March 11, 2014, Plaintiff saw Health Services at Estill for his 14 day evaluation for admission. *Id.* at 66. The Acting Clinical Director, Dr. Reed, performed this evaluation. Medical records note Dr. Reed "will place request for an orthotis [sic] consult for custom shoes." *Id.* at 68. On March 26, 2014, the URC at Estill deferred the medical consult for surgery. *Id.* at 69. Plaintiff was seen by Carolina Foot Specialists, Dr. Brown, on April 24, 2014. *Id.* at 72. Dr. Brown requested Plaintiff "be allowed to return for casting of custom orthotics to alleviate load to the painful areas. He also needs to switch to a wider (4E) shoe to avoid pressure to the area." Dr. Brown noted "if this fails to alleviate the symptoms then I am recommending surgical

correction of the bunion and hammertoe deformity of the left foot." *Id.* at 73. On July 30, 2014, Plaintiff was seen by Positive Image Prosthetics and Orthotics for soft soled shoes and custom inserts. ECF No. 1-2 at 1.

A BOP Health Services Clinical Encounter note on May 7, 2015, requested a podiatry referral. *Id.* at 4. On October 13, 2015, another Health Services note referred Plaintiff to podiatry. *Id.* at 9. However, the URC denied the podiatry consult on December 2, 2015, and instead Plaintiff was "placed on waiting list for in-house orthotics clinic." *Id.* at 11. A Health Services note on April 7, 2016, includes "chronic foot pain x 5 year . . . [h]e has custom orthotic but has had no relief with these orthotics I will refer him back to podiatry." *Id.* at 18. Another Health Services note from October 4, 2016 again states "[h]e need [sic] casting for custom orthotic . . . orthotic has not provided this for him I will refer him back to podiatry for this custom fitting." *Id.* at 22. However, the next Health Services note on October 26, 2016, states the "consult for podiatry was denied disapproved" and referred him to the in-house orthotics clinic. *Id.* at 26. On January 23, 2017, a Health Services provider referred Plaintiff back to podiatry as his feet had not improved. *Id.* at 36. A note on March 7, 2017, states "Had been evaluated by 2 podiatrist who recommended surgery. A repeat podiatry consult is pending his podiatry consult was disapproved previously however he is still having pain in his feet despite custom fitted orthotics." *Id.* at 51. On March 16, 2017, Plaintiff was seen by Positive Image Prosthetics and Orthotics again, and received comfort tennis shoes and custom inserts. *Id.* at 55.

Plaintiff was seen by Podiatrist Dr. Brown again on April 18, 2017, at which time he described Plaintiff as a new patient[3] and recommended flat, cushioned shoes and reduced activity. *Id.* at 56-57. Plaintiff alleges the shoes furnished did not alleviate his pain, and his body continues to "deteriorate" due to his untreated foot deformity.[4] ECF No. 1 at 58.

### 3. Discussion

The Magistrate Judge recommended dismissal of any claims related to pre-March 2015 conduct because Plaintiff failed to exhaust his administrative remedies for that time period, and post-March 2015 claims because Plaintiff failed to file an expert affidavit with his Complaint for professional negligence. ECF No. 31.

Plaintiff objects to the Report's recommended dismissal, arguing he presented four expert physicians' written recommendations to the BOP for surgery and he has no way to obtain an expert affidavit as required by the South Carolina statute. ECF No. 34. He contends "no affidavits are required in this case since all (4) experts have furnished medical evaluations and recommendations that the BOP consulted them for and all (4) were received and are on file with this court." *Id.* at 6. He also argues this is not a malpractice case, but a "tort claim for negligence and breach of duty by the BOP, which does not require affidavits." *Id.* at 7. Regarding the exhaustion of administrative remedies for claims before March 2015, Plaintiff contends the BOP staff at Forrest City, Arkansas "committed a fraudulent act when they did not

---

[3] Records reflect Plaintiff previously saw Dr. Brown on April 24, 2014.

[4] Plaintiff states he has requested medical records beyond this date, but has not received them.

6

advise Plaintiff of the results of the evaluation and recommendation by Dr. Sokoloff, an Orthopedic Surgeon," who recommended surgery: Plaintiff argues that information was "intentionally concealed" from him until he received his medical records in April 2017. *Id.* at 7-8. Plaintiff requests he be allowed to continue with all claims, including those arising prior to March 2015, due to this "intended fraud and misrepresentation by the BOP medical and administrative staff at Forrest City." *Id.* at 9. Finally, Plaintiff requests his opposition to the Government's motion be reviewed by the "newly appointed District Judge assigned to Plaintiff's case." *Id.* at 11.[5]

### a. Exhaustion of Administrative Remedies

The FTCA requires a claimant to present his claim to the appropriate agency, in writing, before instituting a case in court. *See* 28 U.S.C. § 2675(a). "It is well settled that the requirement of filing an administrative claim is jurisdictional and may not be waived." *Henderson v United States,* 785 F.2d 121, 123 (4th Cir. 1986).

The court agrees with the Magistrate Judge claims for actions or inactions before March 2015 were not administratively exhausted. Plaintiff filed a Form 95, "Claim for Damage, Injury, or Death," on February 15, 2017, alleging injury as of March 2015. ECF No. 1-1 at 4. While Plaintiff did file internal grievances regarding the purported denials of medical care for his feet at Forrest City, (*see, e.g.*, ECF No. 1-1 at 23), he did not file an Administrative Form 95, putting

---

[5] As noted above, this court's review is *de novo* because Plaintiff filed objections – the court has reviewed the record, motion, opposition, Report, and objections in making its ruling.

the Government on notice of a tort claim under the FTCA, until 2017, alleging injury as of March 2015. Plaintiff's arguments regarding his medical records do not excuse this failure, as he was aware his feet were not being treated despite recommendations to the contrary even without access to his medical records.

As the requirement of filing an FTCA administrative claim is jurisdictional, the court has no subject matter jurisdiction to act on Plaintiff's FTCA claim for actions before March 2015.

    *b. Negligence*

As a plaintiff "has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances," the requirements of South Carolina law regarding professional negligence complaints are applicable.[6] *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991); *see also Littlepage v. United States*, 528 F. App'x 289, 292 (4th Cir. 2013). The court agrees with the Magistrate

---

[6] S.C. Code § 15-36-100 requires an affidavit be filed with the complaint in professional negligence cases (including those against licensed medical doctors, nurses, physician's assistants, podiatrists, and the like), and S.C. Code § 15-79-125 requires several pre-suit procedures specifically for medical malpractice cases. There appears to be some confusion in the case law regarding whether both statutes apply to FTCA cases in federal court. *Compare Grant v. United States,* C/A No. 3:17-cv-1377-CMC, 2017 WL 2265956, at *9 (D.S.C. May 24, 2017) *with Gamez-Gonzalez v. United States,* C/A No. 4:14-2668-JMC, 2017 WL 3084488 (D.S.C. May 17, 2017) *adopted by,* 2017 WL 3067974 (D.S.C. July 19, 2017). However, the courts in this district are in agreement that § 15-36-100 applies in FTCA cases. *See, e.g., Craig v. United States*, C/A No. 2:16-cv-3737, 2017 WL 6452412, at *3 (D.S.C. Nov. 6, 2017), *adopted by* 2017 WL 6408968 (D.S.C. Dec. 15, 2017); *Gamez-Gonzalez*, 2017 WL 3084488, at *3; *Allen v. United States*, C/A No. 2:13-cv-2740, 2015 WL 1517510, at *3 (D.S.C. Apr. 1, 2015).

Judge Plaintiff's claims sound in professional negligence against licensed medical providers, not ordinary negligence, and therefore require an expert affidavit pursuant to S.C. Code § 15-36-100. *Delaney v. United States*, 260 F.Supp.3d 505, 509-10 (D.S.C. 2017) (finding the plaintiff's claim "rests on the specialized knowledge that medical professionals . . . possess . . ." and was therefore a medical malpractice claim); *Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501, 504 (S.C. 2014) (holding if the patient receives "allegedly negligent professional medical care" then expert testimony on the standard of the type of care is necessary, but if the patient receives "nonmedical, administrative, ministerial, or routine care," then it is an ordinary negligence action that does not require any expert testimony); *see Littlepage*, 528 F. App'x at 293-94 (reaching same conclusion regarding a similar requirement in North Carolina).

This case is not one challenging some nonmedical aspect of prisoner care, but directly implicates standard of care issues regarding the treatment of Plaintiff's medical complaints related to his feet. *See, e.g.*, ECF No. 1 at 2 (Plaintiff alleges he "was neglected by denying proper medical attention to plaintiff's feet for a prolonged period of time."). Further, Plaintiff alleges the "BOP's medical staff's actions are in violation of their code of medical conduct . . . because they have interfered, delayed, and actually denied the proper medical treatment for the deformity of both of my feet." *Id.* at 60. He also alleges the BOP's URC negligently denied his surgery after it was recommended by specialists. *Id.*

To the extent Plaintiff alleges professional negligence by BOP medical providers, an expert affidavit filed with the Complaint is required under § 15-36-100. Similarly, claims alleging negligence by URC members who are professionally licensed medical providers also

9

require an expert affidavit, as Plaintiff contends they negligently made decisions in their roles as healthcare providers regarding his medical care. Further, it appears the requests for surgery as reviewed by the URC were escalated to the Regional Director, who was a physician. Any claim alleging negligence by the Regional Director for denial of medical care would also require an expert affidavit.[7]

Although Plaintiff argues he has filed four expert statements noting he should have surgery, none conform to the requirements of the statute, as there is no affidavit by an expert witness specifying "at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit." § 15-30-100(B). Instead, Plaintiff has simply filed as evidence his medical records, some of which contain recommendations for surgery. These do not satisfy the requirements of South Carolina law. Further, as Plaintiff appears to acknowledge, this is not a case "involving subject matter that lies within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant." § 15-30-100(B)(2). Therefore, Plaintiff's failure to file an expert affidavit with his Complaint is fatal to his case. *See* § 15-30-100(C)(1); *Craig v. United States*, No. 2:16-cv-3737, 2017 WL 6408968, at *1 (D.S.C. Dec. 15, 2018) (adopting Report and Recommendation at 2017 WL 6452412); *see also Littlepage*, 528 F. App'x at 295, 296.

---

[7] While any claims alleging negligence by URC members who were not medical professionals may not require an affidavit, claims against non-medical URC members would not survive, as the ultimate decision was made by the Regional Director.

### 4. Conclusion

After considering the record, the applicable law, the Report and Recommendation of the Magistrate Judge and Plaintiff's objections, the court agrees with the Report's recommendation the Complaint be dismissed without prejudice. Plaintiff has failed to exhaust FTCA administrative remedies for any claim of injury before March 2015, and failed to file an expert affidavit with his professional negligence claim. For the reasons above, the court adopts the Report and incorporates it by reference. Plaintiff's claims under the FTCA for conduct prior to March 2015 are dismissed as the court is without jurisdiction to consider them.[8] The remainder of Plaintiff's Complaint is dismissed without prejudice.[9]

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE

---

[8] It appears to the court Plaintiff's complaints amount to a garden variety *Bivens* claim for constitutional violations based on deliberate indifference to medical needs. A *Bivens* claim would not require FTCA administrative exhaustion on a Form 95, and would not require an expert affidavit be filed with the Complaint. *See Wilder v. Krebs*, C/A No. 3:17-cv-763, 2018 WL 4020211 at *2 (D.S.C. Aug. 23, 2018). (Of course, other exhaustion requirements would apply, as well as the statute of limitations). However, Plaintiff specifically stated this Complaint was brought under the FTCA and not under *Bivens*; therefore, the court is unable to construe this Complaint, as filed, as a *Bivens* claim. If Plaintiff were to bring a new *Bivens* claim for continuing deliberate indifference, he would first need to file a new administrative grievance (assuming one is not currently pending) and completely exhaust the BOP's administrative process (*see* ECF No. 31 at 8 n.1) before filing a new case in court.

[9] "A dismissal for failure to comply with S.C. Code 15-36-100 is without prejudice." *Gamez-Gonzalez v. United States*, No. 4:14-2668, 2017 WL 3084488, at *3 n.5 (D.S.C. May 17, 2017) (citing *Rodgers v. Glenn*, Civ. A. No. 1:16-16-RMG, 2017 WL 1051011, at *4 (D.S.C. Mar. 20, 2017)).

Senior United States District Judge

Columbia, South Carolina
October 25, 2018